ORIGINAL

No. 11-231C
(Judge George W. Miller)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MICHAEL E. YOUNG,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

**FILED**

**JUL 1 1 2011**

U.S. COURT OF
FEDERAL CLAIMS

DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION, OR IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM, OR IN
THE ALTERNATIVE, DEFENDANT'S MOTION FOR JUDGMENT UPON THE
ADMINISTRATIVE RECORD

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR
Assistant Director

OF COUNSEL:

MAJOR IMELDA L. PAREDES
MAJOR LAUREN DIDOMENICO
Trial Attorney
Military Personnel Litigation Branch
1500 W. Perimeter Road, Suite 1370
Joint Base Andrews, Maryland 20762
Tel: (240) 612-4726
Fax: (240) 612-4450

AUSTIN FULK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0546
Fax: (202) 353-0972
Attorneys for Defendant

July 11, 2011

# TABLE OF CONTENTS

**PAGE**

DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION, OR IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM,
OR IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR JUDGMENT UPON THE
ADMINISTRATIVE RECORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.     Statutory And Regulatory Framework . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    III.     Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.     Mr. Young's Rejection of His Overseas Assignment . . . . . . . . . . . . . . . . . 6

        B.     Mr. Young's Performance Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.     Inspector General Complaints And Response . . . . . . . . . . . . . . . . . . . . . . 10

        D.     Advisory Opinions To The Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

I.     Motion To Dismiss For Lack Of Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . 17

        A.     Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        B.     The Court Does Not Possess Jurisdiction To Entertain Mr. Young's
            Complaint Because He Failed To Plead A Money-Mandating
            Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C.    37 U.S.C. § 204 Does Not Serve As A Money-Mandating
Statute to Confer Jurisdiction On This Court Because Mr. Young's
Enlistment Expired On The Date Of His Discharge,
On April 12, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

D.    To The Extent Mr. Young Requests APA Review Of The Board's
Decision, Those Claims Must Be Dismissed Because The APA Does
Not Grant Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

II.    Motion To Dismiss For Failure To State A Claim  . . . . . . . . . . . . . . . . . . . . . . . 21

A.    Standard Of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.    Mr. Young Does Not Have A Cognizable Claim Because His
Enlistment Expired On April 12, 2005; Therefore, His Complaint
Should Be Dismissed  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

C.    Mr. Young's Request That The Court Promote Him To E-7 Is
Nonjusticiable  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.    Even If The Court Were To Determine That Mr. Young's Complaint States
A Cognizable Claim, The Government Is Entitled To Judgment Pursuant
To Rule 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

A.    Standard Of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B.    The Board's Decision Was Based On Substantial Evidence And Was
Not Aribtrary Or Capricious . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

C.    The Board's Decision Was Not Contrary To Law Or Regulation  . . . . . . . 30

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

**CASES**                                                             **PAGE(S)**

*A & D Fire Prot., Inc. v. United States,*
    72 Fed. Cl. 126 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Arnheiter v. Chaffee,*
    435 F.2d 691 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Austin v. United States,*
    206 Ct. Cl. 719, 722-23, *cert. denied,*
      423 U.S. 911 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Banerjee v. United States,*
    77 Fed. Cl. 522 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bannum, Inc. v. United States,*
    404 F.3d 1346 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Barnick v. United States,*
    591 F.3d 1372 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bernard v. United States,*
    59 Fed. Cl. 497 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Blevins v. Plummer,*
    613 F.2d 767 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Bockoven v. United States,*
    727 F.2d 1558 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Booth v. United States,*
    990 F.2d 617 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Brenner v. United States,*
    202 Ct. Cl. 678 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Chambers v. United States,*
  417 F.3d 1218 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 26

*Chappell v. Wallace,*
  462 U.S. 296 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Clackum v. United States,*
  161 Ct.Cl. 34, 36 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Crocker v. United States,*
  125 F.3d 1475 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dilley v. Alexander,*
  603 F.2d 914 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Dodson v. United States,*
  988 F.2d 1199 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Doe v. United States,*
  132 F.3d 1430 (Fed.. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Doggett v. United States,*
  207 Ct. Cl. 478 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Dorl v. United States,*
  200 Ct. Cl. 626, 633 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Erickson v. Pardus,*
  551 U.S. 89 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Fort Carson Support Servs. v. United States,*
  71 Fed. Cl. 571 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Godwin v. United States,*
  338 F.3d 1374 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hamlet v. United States,*
  873 F.2d 1414 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Heisig v. United States,*
  719 F.2d 1153 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29, 31

*Henke v. United States,*
  60 F.3d 795 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Holley v. United States*,
124 F.3d 1462 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Inter-Coastal Xpress, Inc. v. United States*,
296 F.3d 1357 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Koretsky v. United States*,
57 Fed. Cl. 154 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Lindsay v. United States*,
295 F.3d 1252 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lion Raisins Inc. v. United States*,
416 F.3d 1356 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Maier v. Orr*,
754 F.2d 973 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Metz v. United States*,
446 F.3d 996-97 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Montiel v. United States*,
40 Fed.Cl. 67 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Orloff v. Willoughby*,
345 U.S. 83 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Porter v. United States*,
163 F.3d 1304 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Reaves v. Ainsworth*,
219 U.S. 296 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Reynolds v. Army & Air Force Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Richey v. United States*,
322 F.3d 1317 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Roth v. United States*,
378 F.3d 1371 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Sargisson v. United States,*
      913 F.2d 918 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 24

*Sherwin v. United States,*
      42 Fed. Cl. 672 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Skinner v. United States,*
      594 F.2d at 830 (citations omitted) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Smith v. Army,*
      384 F.3d 1288 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Strickland v. United States,*
      36 Fed. Cl. 651 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Thomas v. United States,*
      42 Fed. Cl. 449 (1998), *aff'd,*
      217 F.3d 854 (Fed. Cir. 1999) *(per curiam)* (table) . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

*United States v. Sherwood,*
      312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Testan,*
      424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Van Cleave v. United States,*
      70 Fed. Cl. 674 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Voge v. United States,*
      844 F.2d 776 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Wilson v. United States,*
      404 Fed. Appx. 499, 500 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wisotsky v. United States,*
      69 Fed.Cl. 299 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Wronke v. Marsh,*
      787 F.2d 1569 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Wyatt v. United States,*
      23 Cl. Ct. 314, 319 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## FEDERAL STATUTES AND REGULATIONS

5 U.S.C. §§ 701-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

10 U.S.C. § 1552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

10 U. S. C. § 1552(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

28 U.S.C. § 1491(a)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

28 U.S.C. § 1491(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

37 U.S.C. § 204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19, 20, 23

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MICHAEL E. YOUNG,                              )
                                               )
                 Plaintiff,                    )          No. 11-231C
                                               )          (Judge George W. Miller)
         v.                                    )
                                               )
THE UNITED STATES OF AMERICA,                  )
                                               )
                 Defendant.                    )

## DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

Pursuant to Rule 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint of plaintiff, Michael E. Young, for lack of subject matter jurisdiction and for failure to state a claim. In the alternative, the United States respectfully requests that the Court enter judgment upon the administrative record in favor of the United States pursuant to Rule 52.1 of the RCFC. In support of its motion, defendant relies upon the complaint, the following brief, and the administrative record filed under separate cover.

## ISSUES PRESENTED

1. Whether this Court possesses subject matter jurisdiction to entertain Mr. Young's complaint.

2. Whether the complaint should be dismissed for failure to state a claim because Mr. Young was honorably discharged upon the expiration of his term of enlistment on April 12, 2005, thereby precluding the Court from granting the relief requested.

3. Whether the actions of the Air Force Board for Correction of Military Records ("the Board") were arbitrary, capricious, unsupported by substantial evidence, or contrary to law, when it determined that the evidence presented did not demonstrate the existence of material error or injustice.

## STATEMENT OF THE CASE

### I.    Nature Of The Case

Mr. Young initially enlisted on active duty in the United States Air Force on April 1, 1987, for a period of four years. Complaint, Att. 1; Administrative Record ("AR") 99(a) 85-88. After a series of reenlistments, Mr. Young entered his last period of enlistment on April 13, 2001, for a period of four years. AR 99(a) 69-72. During this last enlistment, on July 3, 2002, Mr. Young received notification that he was selected as a non-volunteer to transfer to Eielson Air Force Base, Alaska, for a tour length of 36 months. Complaint at ¶ 3. Such a transfer would have resulted in the expiration of his term of service while performing duty in Alaska; accordingly, Mr. Young was required by Air Force regulation to either accept the transfer and extend his enlistment, or decline the transfer and be ineligible to extend his enlistment or reenlist for a period of 93 calendar days after separation and be ineligible for promotion. AR 29. Mr. Young refused to extend his enlistment and he did not transfer to Alaska. *Id.*

On September 18, 2004, Mr. Young petitioned the Air Force Board for Correction of Military Records ("the Board") regarding the circumstances surrounding his selection for an overseas assignment, his declination to extend his enlistment period, and numerous personnel actions by his supervisors that he alleged were retaliatory or otherwise improper. AR 11. On

2

March 10, 2005, the Board concluded there was insufficient relevant evidence before it to demonstrate the existence of error or injustice. AR 8-9.

On April 12, 2005, Mr. Young's enlistment period expired, and in accordance with the terms of his enlistment contract, he was separated from active duty at pay grade E-5. Complaint, Att. 1; AR 99(a) 63. His service was characterized as honorable. *Id.* Mr. Young's personnel records indicate that he did not attempt to reenlist in military service after he was discharged on April 12, 2005.

Mr. Young now brings this action in the United States Court of Federal Claims requesting that this Court find that the Board acted arbitrarily and capriciously when it denied Mr. Young's requests to have removed from his record a Letter of Reprimand, a Letter of Counseling, an AF Form 964 and all administrative consequences thereof; to have upgraded or removed from his record three Enlisted Performance Reports (EPR); to be promoted to the grade of E-6 or E-7 with back pay and allowances; to receive an assignment to his base of preference; and to have all derogatory data expunged from his records. AR 3-9.

## II.   **Statutory And Regulatory Framework**

The boards for correction of military records are statutorily created bodies of the Department of Defense that act as independent panels to review requests by current and former military members. *See* 10 U.S.C. § 1552. The boards for correction of military records allow aggrieved Armed Forces members to correct any military record when the Secretary of a military department, acting through the respective board, considers it necessary to correct an error or remove an injustice. The board can provide such remedies as retroactive back pay and retroactive promotion. *See* 10 U. S. C. § 1552(a)(c); *Chappell v. Wallace*, 462 U.S. 296, 303

3

(1983).  If a member believes that a final action taken by the Air Force constitutes an error or

injustice, the member may appeal the decision through application to the Board.  An application

to the Board is the highest administrative appeal within the agency.

Air Force Instruction (AFI) 36-2110[1] establishes criteria and procedure for assigning

military personnel to satisfy operational, rotational, and training requirements.  *See* Attach. 1

(AR 74-80).  In selecting personnel to transfer to an overseas station ("OS"), non-volunteer

members are prioritized based on the following:  first, those with no previous OS tours, by

overseas duty selection date ("ODSD"); then, those with one or more previous OS tours, by

ODSD; last, by date arrived on station ("DAS").  AR 131; AFI 36-2110, Table 3.3, Priority 10.

As a result, those with no previous OS tours are considered before those with one or more tours.

AR 131; AFI 36-2110, ¶¶ 3.3, 3.3.6; Table 3.3.  Upon official notification of OS Permanent

Change of Duty Station ("PCS")[2] selection, a member is required to accept the unaccompanied

tour length or take one of the other authorized actions within the prescribed timeframe.  AFI 36-

2110, ¶ 3.6.

When an enlisted member receives PCS notification to transfer from a station in the

continental United States ("CONUS") to an OS, the Military Personnel Flight ("MPF") will

conduct a retainability interview.  AFI 36-2110, ¶ 2.29.6.4.2 (AR 79).  "Retainability" is

---

[1] The instruction applicable during the period at issue in this matter is dated February 1, 2000, and relevant portions of the instruction are contained at Attachment 1.  Since February 1, 2000, AFI 36-2110 has been superseded three times: June 9, 2003, April 20, 2005, and September 22, 2009.  All references to AFI 36-2110 herein refer to the 2000 instruction, unless otherwise noted.

[2] PCS means, in general, movement of a member to a different duty location for permanent duty, regardless of distance (with or without concurrent change in unit of assignment) under competent orders that do not specify the duty as temporary, do not provide for further assignment to a new permanent duty station, or do not direct return to the old permanent duty station.

obligated active military service. AFI 36-2110, ¶ 2.29 (AR 75). Minimum retainability requirements are established for PCS to ensure that the Air Force receives repayment for the costs associated with PCS, to provide mission continuity to the gaining unit, and to provide stability to members and their families after PCS. AFI 36-2110, ¶ 2.29 (AR 75). The minimum PCS retainability policies and procedures for enlisted Air Force personnel are outlined in AFI 36-2110, Tables 2.5 and 2.6 (AR 74).

The MPF requires enlisted members to obtain retainability no later than 30 calendar days after official PCS notification. AFI 36-2110, ¶ 2.29.6.4.2 (AR 79). When PCS is OS (either from the CONUS or from OS), members must have or obtain retainability for at least the unaccompanied tour length, within 30 calendar days of PCS notification. *Id.* Members who do not have retainability and want to obtain it, may do so if otherwise eligible. AFI 36-2110, ¶2.29.6.2 (AR 78).

When members do not have retainability and do not want to obtain it, their declination will be formally recorded, unless they are eligible and desire to request retirement. AFI 36-2110, ¶ 2.29.6.3.1 (AR 78). Members who refuse to obtain retainability are required to read the portions of AFI 36-2606, *Reenlistment in the United States Air Force* and AFI 36-2502, *Airman Promotion Program,* pertaining to ineligibility for reenlistment or extension of enlistment, and promotion ineligibility, and to sign an AF Form 964, "PCS, TDY, or Training Declination Statement." *Id.*

If a member will not sign the AF Form 964, the following statement will be entered on the AF Form 964, signed by the person who counseled the member: "(Grade, name, SSN of member), has refused to sign this document confirming his or her decision to decline to obtain

5

retainability and acknowledging he or she is ineligible for promotion and ineligible to extend his or her enlistment or reenlist for a period of 93 calendar days after separation." *Id.*

## III.   **Statement Of Facts**

### A.   Mr. Young's Rejection of His Overseas Assignment

On July 8, 2002, Mr. Young received a Notification of Selection for Reassignment informing him that he was selected for a PCS to Eielson Air Force Base, Alaska, and to report no later than January 30, 2003. AR 123-126. The notification also informed Mr. Young that he was scheduled to attend a relocation briefing on July 16, 2002, and specified the time and location. AR 125.

Upon receipt, Mr. Young indicated that he did not intend to decline PCS retainability, and he read and fully understood the applicable provisions of AFI 36-2110 pertaining to retirement options and PCS declination and would comply with the specified time periods. AR 126. He also indicated that he did not agree with the data used to select him for the assignment because he was selected on the basis of "erroneous overseas data." *Id.*

Mr. Young was selected as the most eligible non-volunteer. AR 31. There were 12 people with priority above Mr. Young on the selection list, including those who had not served OS. AR 31. However, none of these 12 persons were otherwise eligible for OS PCS reassignment for the following reasons: eight were on controlled tours, three were High Year of Tenure Restricted, and one did not meet the time on station requirement for reassignment. AR 31. As a result, Mr. Young was selected as the most eligible non-volunteer. AR 31.

The notification specifically informed Mr. Young that his date of separation (DOS) was April 12, 2005, and the projected tour length was 36 months; therefore, Mr. Young was to ensure

6

compliance with AFI 36-2110. AR 126.   Pursuant to AFI 36-2110, ¶ 3.6, Mr. Young was required to accept the transfer, or take another authorized action as outlined in paragraphs 2.32.2-2.32.4.5 of AFI 36-2110. AR 80.  In other words, Mr. Young had to either accept the PCS orders and extend his period of enlistment, or decline to get retainability.  AR 31.

On January 14, 2003, the Deputy Commander of Mission Systems Flight, Second Lieutenant (2nd Lt) Darren Stephens, ordered Mr. Young to accomplish two tasks: (1) contact the section superintendent of the gaining unit at Eielson AFB with the phone number provided; and (2) contact outbound assignments on January 15, 2003, and report back on the status of his pending PCS orders.  AR 42.

On January 17, 2003, Mr. Young met with Master Sergeant (MSgt) Keith Garrett, Chief MSgt (CMSgt) Glavich, and 2nd Lt Darren Stephens. AR 135.  The group discussed the importance of visiting Nellis Outbound Assignments to prepare for the pending PCS to Eielson AFB. AR 135.  During the meeting, 2nd Lt Stephens issued three more orders to Mr. Young: (1) to report to outbound assignments at the MPF at one o'clock that afternoon; (2) immediately after going to outbound assignments, to report to flight call and provide all the directions he was given at the outbound assignment section; and, (3) to utilize his chain of command if he had problems procuring out-processing appointments with any agency on Nellis AFB.  AR 135.

During the meeting on January 17, 2003, Mr. Young started the process to obtain retainability by executing AF Form 1411, *Extension or Cancellation of Extensions of Enlistment in the Regular Air Force/Air Force Reserve*, requesting to extend his current enlistment by nine months. AR 28, 133.  This extension would have extended Mr. Young's enlistment period to January 2006. AR 28.  The form indicates that the authority for the request is AFI 36-2606,

7

Table 4.1, Rule 12, and that all extensions to his current enlistment (including this extension) total nine months. AR 28. Lieutenant Colonel (Lt Col) Hatcher signed this form recommending approval on the same date. *Id.*

On January 21, 2003, however, Mr. Young refused to take any further action to get the retainability required to accept the assignment. AR 31. He stated he would not process for the OS assignment. AR 31. Accordingly, MPF supervisory personnel counseled Mr. Young on the consequences of formally declining to get the required retainability, as noted on AF Form 964, *PCS, TDY or Training Declination Statement.* AR 29-30. Mr. Young refused to sign the AF Form 964 that confirmed his decision to decline to obtain retainability and his acknowledgment that doing so made him ineligible for promotion, extension of enlistment, and reenlistment for a period of 93 calendar days after his separation. AR 30-31. Rather than sign the form, Mr. Young orally acknowledged that he understood that declining to obtain retainability would result in him being ineligible for promotion, extension of enlistment, and reenlistment for a period of 93 days after separation. *Id.*

Pursuant to Air Force instruction, the MPF assigned Mr. Young Assignment Availability Code ("AAC") 09. AR 100; AFI 36-2110, ¶¶ 2.15.1.5, 2.29.6.3.1; Table 2.1 Rule 4.

Also on January 21, 2003, 2nd Lt Stephens issued a Letter of Reprimand (LOR) to Mr. Young for violating the Uniform Code of Military Justice, Article 92, *Failure to Obey an Order or Regulation.* AR 41-42. The LOR stated that Mr. Young failed to accomplish two tasks that he had been ordered to accomplish: (1) contact his gaining unit's section superintendent using the phone number provided; and (2) contact outbound assignments on January 15, 2003, and report back to 2nd Lt Stephens or MSgt Garrett regarding the status of his pending orders. AR

8

42. Mr. Young acknowledged receipt of the LOR, and submitted a written response on January 24, 2003. AR 33-35, 42. In his response, Mr. Young acknowledged that 2nd Lt Stephens told him to contact his gaining unit, and to contact outbound assignments. AR 33. Mr. Young indicated that he did not contact his gaining unit because he had already contacted them "on or about a week before." AR 33.

On January 27, 2003, Mr. Young's First Sergeant read a Memo for Record to Mr. Young, specifically informing him of the following:

> It was brought to my attention on 22 January, 2003, . . . that you opted not to sign for retainability to accept an assignment nor did you sign the declination of assignment Form 964. In so doing, the decision of the MPF was to submit the declination of assignment for you. Form 964 was submitted on your behalf stating that you declined your assignment to Eielson, AFB, Alaska. During your meeting with CMSgt Thorn, you were advised of the consequences for this action. You will be ineligible for reenlistment and also ineligible for promotion which, according to AFI 36-2502, Table 1.1, renders you ineligible to test . . . .

AR 36. Mr. Young refused to acknowledge in writing that he understood the memo. AR 36.

On August 14, 2003, Mr. Young was given an informative Letter of Counseling (LOC) advising him that he could retract the declination statement submitted on his behalf. AR 37-38. The LOC advised Mr. Young that he had the option of withdrawing the AF Form 964 pursuant to AFI 36-2110, *Assignments*.[3] Mr. Young's supervisor annotated the acknowledgment page of the LOC, stating that Mr. Young refused to sign the LOC and that he stated he was aware of the information contained in the LOC prior to receiving the LOC. AR 38, 40.

---

[3] The June 9, 2003, edition of AFI 36-2110 was attached the LOC because that is the edition that was in effect at that time. AR 39.

B. Mr. Young's Performance Reports

On December 11, 2002, Mr. Young received an Enlisted Performance Report ("EPR") with an overall rating of "4", covering the period from October 10, 2001, to October 9, 2002. AR 70-71. Mr. Young produced a document dated November 19, without a corresponding year, that erroneously shows that he received a "5" for this EPR. AR 56. On December 13, 2002, Mr. Young submitted a rebuttal to this EPR rating and the withholding of an Air Force Commendation Medal. AR 58.

On October 9, 2003, Mr. Young received an EPR with an overall rating of "4", covering the period from October 10, 2002, to October 9, 2003. AR 72-73. On October 15, 2004, Mr. Young received an EPR with an overall rating of "4", covering the period from October 10, 2003, to October 9, 2004. AR 97-98.

C. Inspector General Complaints And Response

On December 26, 2002, Mr. Young submitted a complaint to the Installation Inspector General on Nellis AFB ("Nellis IG") regarding his selection for an overseas assignment ("IG Complaint 1"). AR 129-130. The Nellis IG conducted an inquiry and responded to Mr. Young on January 15, 2003. AR 129-130. The Nellis IG found that the preponderance of evidence indicated the assignment selection process used to select Mr. Young for reassignment to Eielson AFB was both equitable and in compliance with Air Force directives and policy. AR 130. The Nellis IG explained that the OS selection order for long tours is outlined in AFI 36-2110. AR 129. Further:

> According to Table 3.3, Priority for OS Long Tour Selection, nonvolunteers are racked and stacked based upon the following criteria: if no previous OS tours, then by date entered active duty as most eligible; then, those with one or more previous OS tours,

10

> by ODSD [Overseas Duty Selection Date],[4] and then [by] DAS
> [Date Assigned Station]. Consequently, those with no previous OS
> tours are looked at before those with one or more OS tours.

AR 129; see AFI 36-2110, Table 3.3, Priority 14.

The Nellis IG also explained that, although there were several individuals with selection priority higher than Mr. Young on the selection list, including those who had not served OS, those individuals were otherwise ineligible for the OS assignment—for example, they were on controlled tours, High Year of Tenure Restricted, or did not meet the minimum time on station requirements for a PCS. AR 129. Mr. Young's priority sequence was based on having served one or more OS tours (rather than the number of OS tours completed), and then by his ODSD and DAS. AR 129. Mr. Young's selection was ultimately based on his ODSD of September 6, 1995, not the number of OS tours he had completed. AR 129.

Mr. Young submitted another written complaint to the Nellis IG, alleging that his chain of command violated AFI 36-2406, *Officer and Enlisted Evaluation Systems* ("IG Complaint 2").[5] He alleged that (1) his supervisor failed to conduct required feedback sessions; (2) his supervisor and flight chief retaliated against him by lowering his EPR from a "5" to a "4" as a result of a protected communication he made to his commander; and (3) his supervisor and flight chief unfairly denied him a commendation medal in reprisal for a protected communication to his commander. AR 136-137. Though not alleged, the Nellis IG also reviewed the circumstances surrounding the LOR given to Mr. Young on January 21, 2003, as a possible reprisal. AR 54.

---

[4] This is the date a member last returned from an overseas tour. AR 129; AFI 36-2110, ¶ 3.5.1.3.

[5] The Nellis IG response indicates that Mr. Young's complaint is dated January 15, 2003; however, the written complaint containing these allegations is dated December 20, 2002. See AR 54, 136.

11

On April 22, 2003, the Nellis IG provided a written response to IG Complaint 2. AR 54-55. The Nellis IG found inconclusive evidence regarding Mr. Young's allegation that his supervisor failed to conduct a feedback session on July 8, 2002. AR 54. There was documentary evidence that Mr. Young's supervisor conducted a feedback session on December 2, 2002, before the EPR was finalized, and, in any event, a rater's failure to conduct a required feedback session does not invalidate any subsequent performance report. AR 54.

With his IG Complaint 2, Mr. Young produced a personnel document dated "November 19," which indicated his EPR ending October 9, 2002, was a "5." AR 56. The Nellis IG found no indication that Mr. Young's performance ratings were changed as a result of his protected communications, because the only report written or signed was written and marked as an overall "4," and the only EPR taken to the MPF for processing and inclusion in Mr. Young's records was marked as a "4." AR 54. The Nellis IG concluded that the EPR was written and processed in accordance with AFI 36-2406, and the evidence supported the determination that the EPR would have been written as a "4" even if the protected disclosure had not been made. AR 54.

With regard to Mr. Young's allegation that he was denied a military decoration, the Nellis IG determined that Mr. Young's supervisor had intended to recommend him for a decoration due to his pending PCS; however, when his PCS assignment was cancelled the decoration was also cancelled. AR 55. The Nellis IG determined that the evidence established that 2nd Lt Stephens issued Mr. Young an LOR as a result of Mr. Young's failure to comply with lawful orders regarding assignment actions, rather than in retaliation for making a protected disclosure. AR 55.

12

The Department of Defense Inspector General ("DOD IG") conducted a preliminary inquiry into Mr. Young's allegations of retaliation and determined that an investigation was not warranted. AR 48. The DOD IG inquiry found insufficient evidence to support Mr. Young's allegation that he was improperly selected for an involuntary overseas assignment or that the MPF processed his declination for the assignment in retaliation for protected communications. AR 48. Specifically, the DOD IG determined that the MPF had completed the declination form in accordance with AFI 36-2606, *Reenlistment in the United States Air Force*. AR 48.

The DOD IG also reviewed the Nellis IG complaint analysis regarding Mr. Young's prior retaliation complaint concerning his Enlisted Performance Report, the denial of an Air Force Commendation Medal, and the LOR. AR 49. The DOD IG agreed with the Nellis IG's conclusion that the facts provided detailed rationale and showed that all actions were appropriate. AR 49.

D. Advisory Opinions To The Board

After receipt of Mr. Young's petition on September 18, 2004, the Air Force Board for Correction of Military Records ("the Board") sought advisory opinions on relevant matters. On October 20, 2004, the Air Force Personnel Center, Directorate of Assignments, Airman Management Branch ("AFPC/DPAAS"), issued an opinion regarding Mr. Young's request to the Board to remove Assignment Availability Code ("AAC") 09 from his record. AR 100. The response outlined the applicable provisions of AFI 36-2110 pertaining to retainability requirements and procedures. Pursuant to the applicable instruction, when a member refuses to obtain PCS retainability, he or she must sign an AF Form 964, the assignment is canceled, and an AAC 09 is updated. AR 100. AFPC/DPAAS found that Mr. Young refused to obtain the

13

additional retainability required for the PCS assignment, AAC 09 was updated as a result of Mr. Young's voluntary actions, and there was no evidence to support that the action was done in error. AR 100. Last, Mr. Young did not use the option to request removal of an AAC 09 from his records. AR 100.

On October 29, 2004, the Air Force Personnel Center, Director of Force Operations ("AFPC/DPF"), provided an opinion regarding Mr. Young's request to remove the LOR from his records because it was issued in retaliation, unjust and the result of undue influence in the processing of AF Form 964. AR 101-102; 53. AFPC/DPF found that the LOR was processed in accordance with AFI 36-2907, Unfavorable Information File Program, and therefore, the LOR was administered correctly. AR 101. AFPC/DPF recommended denial of the request because the LOR was administered correctly and the incident was investigated by three higher authorities that concluded the actions were appropriate. AR 102.

On November 12, 2004, the Air Force Personnel Center, Directorate of Personnel Program Management ("AFPC/DPPP"), provided an opinion regarding Mr. Young's 2002 and 2003 performance reports and commendation medal complaints. AR 103-105. With regard to Mr. Young's 2002 EPR, AFPC/DPPP explained that, pursuant to Air Force instruction, an EPR is considered a working copy and is not a matter of record until filed in the Unit Personnel Record Group ("UPRG"). AR 103; AFI 36-2406, ¶ 3.8.17.1. Accordingly, as long as the report was not filed, the evaluators may change the rating at their discretion. AR 103. In addition, the print-out of the report showing a 5 rating can simply be an error in the updating process by the MPF; there was no evidence showing a copy of the report that was on file with the 5 rating. AR 103.

14

AFPC/DPPP also opined that, although Mr. Young contended he had received numerous letters of recommendation and other accolades during the rating period covering the 2003 EPR, that does not constitute a 5 rating because supervisors are aware of their members' awards and praises, and take those awards into consideration when preparing EPRs. AR 104. In addition, Mr. Young received an LOR during the applicable rating period, which could have been a factor in the total performance rating. AR 104. AFPC/DPPP ultimately concluded that no supporting evidence established that the EPRs were inaccurate in their assessment. AR 104. Further, an EPR is considered accurate when rendered; therefore, *substantial* evidence is required to challenge a report's accuracy. AR 104.

AFPC/DPPP also examined Mr. Young's request to be reconsidered for the Air Force Commendation Medal ("AFCM"). Mr. Young claimed that he was recommended for the AFCM by a former supervisor as an extended tour decoration. But there was no evidence to suggest that a decoration recommendation for an extended tour was submitted by the supervisor, signed and recommended by the squadron commander, and placed into official channels; nor was there evidence that the decoration recommendation was ever submitted to the approval authority for approval or disapproval. AR 104.

Finally, AFPC/DPPP provided an opinion regarding Mr. Young's requests for promotion to E-6 or E-7. AFPC/DPPP stated that if Mr. Young was accurately assigned AAC 09 due to his refusal to obtain retainability, Mr. Young was ineligible for promotion consideration in accordance with AFI 36-2502, Table 1.1, Rule 3, which stated that airmen become ineligible for promotion during a particular cycle when they decline to extend or reenlist to obtain service retainability for a PCS. AR 104-105. Accordingly, if the Board were to grant Mr. Young's

15

request to remove the PCS declination code from his records, he would become eligible for supplemental promotion consideration, and Mr. Young would be given the opportunity to test for promotion purposes. AR 105.

Mr. Young was given the opportunity to review each advisory opinion before the Board considered his complaint, and he responded to each opinion on December 30, 2004.[6]  See AR 109-113.

## SUMMARY OF ARGUMENT

The Court should grant the Government's motion to dismiss, or in the alternative, its motion for judgment upon the administrative record because this Court does not possess subject matter jurisdiction to review Mr. Young's claim, Mr. Young has failed to state a claim, and the Board's decision denying Mr. Young relief was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

Absent very limited circumstances in which Congress has granted certain former enlisted personnel a right to reenlist (which is not relevant here), no person has a right to enlist or reenlist.  Indeed, in virtually all cases, service Secretaries and their authorized designees possess absolute discretion in determining whether enlisted personnel should be granted a new term of enlistment, which courts may not second-guess. *Dodson v. United States,* 988 F.2d 1199, 1208 (Fed. Cir. 1993).  Accordingly, because enlisted personnel cannot assert a cognizable cause of action beyond an expired term of enlistment, *id.*; *e.g., Thomas v. United States*, 42 Fed. Cl. 449, 452-53 (1998), *aff'd*, 217 F.3d 854 (Fed. Cir. 1999) (*per curiam*) (table), and because Mr. Young's enlistment expired on April 12, 2005, after 18 years of service, Mr. Young's requests

---

[6] Mr. Young's rebuttal is dated December 30, 2005; however, the signature is manually dated December 30, 2004.

16

for reinstatement to active duty, a retroactive promotion to pay grade E-7, additional active duty credit, and retirement at pay grade E-7 with 24 years' total active duty service, must be dismissed.  Without a cognizable monetary claim, the remainder of Mr. Young's collateral equitable claims should be dismissed for lack of jurisdiction.

Moreover, the Board reviewed Mr. Young's arguments and evidence, as well as the advisory opinions from Air Force experts, applied the appropriate statutes and regulations, and properly concluded that Mr. Young failed to present evidence to support his assertions of impropriety.

Because Mr. Young fails to state a claim for which relief can be granted, the Court should dismiss the complaint in its entirety.  In the alternative, because the Board did not err as a matter of law, the Court should affirm the Board's decision and grant our motion for judgment on the administrative record.

**ARGUMENT**

I.     <u>**Motion To Dismiss For Lack Of Subject Matter Jurisdiction**</u>

A. <u>Standard Of Review</u>

Subject matter jurisdiction may be challenged at any time by the parties, by the Court *sua sponte*, or upon appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993).  The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of

17

the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997).

When deciding a motion to dismiss based upon either lack of subject matter jurisdiction or failure to state a claim, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989). If a defendant challenges the jurisdiction of the Court, however, the plaintiff cannot rely merely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt*, 298 U.S. at 189.

### B. The Court Does Not Possess Jurisdiction To Entertain Mr. Young's Complaint Because He Failed To Plead A Money-Mandating Statute

The United States Court of Federal Claims is a court of limited jurisdiction. *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365-66 (Fed. Cir. 2002). Absent congressional consent to entertain a claim against the United States, the Court does not possess authority to grant relief. *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

The Tucker Act gives the United States Court of Federal Claims jurisdiction to adjudicate claims for monetary damages against the United States based upon the United States Constitution, an Act of Congress, a regulation of an executive department, an express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1491(a). The Tucker Act does not create any substantive right of recovery against the United States for money damages. *Testan*, 424 U.S. at 398; *Chambers v. United*

18

*States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005). Instead, a plaintiff must plead the existence of a money-mandating statute. *Id.* at 1223.

Mr. Young's complaint cites only the Tucker Act, 28 U.S.C. § 1491. As stated above, the Tucker Act is merely jurisdictional and is not itself money mandating. *Testan*, 424 U.S. at 398. Mr. Young's Complaint purports to bring his claims pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. However, the APA is not a money-mandating statute. *Banerjee v. United States*, 77 Fed. Cl. 522, 534 (2007). Therefore, because Mr. Young does not allege violation of a money-mandating statute, his claims should be dismissed. *Metz v. United States*, 446 F.3d 996-97 (Fed. Cir. 2006) (the Court shall dismiss a case for lack of subject matter jurisdiction if the plaintiff fails to plead a money-mandating statute).

   C. Section 204, Title 37, United States code Does
      Not Serve As A Money-Mandating Statute to Confer
      Jurisdiction Upon This Court Because Mr. Young's
      Enlistment Expired On The Date Of His Discharge, On April 12, 2005

Even if the Court were to liberally construe Mr. Young's *pro se* complaint to cite the Military Pay Act, 37 U.S.C. § 204, as the requisite money-mandating statute, *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007), this lenient standard should not prevent a case beyond this Court's jurisdiction from being dismissed. *See, e.g., Wilson v. United States,* 404 Fed. Appx. 499, 500 (Fed. Cir. 2010).

As far as military personnel are concerned, 37 U.S.C. § 204 serves as a money-mandating statute. *See Holley,* 124 F.3d at 1465. This court generally possesses jurisdiction over claims for back pay when enlisted members are involuntarily separated prior to the end of their terms of enlistment and seek reinstatement and back pay. *See* 37 U.S.C. § 204; *Sherwin v. United States,* 42 Fed. Cl. 672, 675 (1999) (citing *Sargisson v. United States,* 913 F.2d 918, 920 (Fed. Cir.

19

1990)). The statute provides that "a member of a uniformed service who is on active duty" is "entitled to the basic pay of the *pay grade to which assigned*...." if the enlisted member of the Armed Services is wrongfully discharged before the end of his or her current term of enlistment. 37 U.S.C. § 204 (emphasis added); *see Austin v. United States,* 206 Ct. Cl. 719, 722-23, *cert. denied,* 423 U.S. 911 (1975).

Once Mr. Young's term of enlistment ended on April 12, 2005, he was no longer entitled to pay under 37 U.S.C. § 204, because he was no longer a service member. AR 99(a) 63, 99(a) 69-72; *see Testan,* 424 U.S. at 402; *see also Dodson,* 988 F.2d at 1208 ("[A]n enlisted serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired had he not been so discharged."). Thus, even if the Court assumes the statute was cited in the complaint, Mr. Young cannot rely on § 204 as a money-mandating statute supporting Tucker Act jurisdiction in the Court of Federal Claims.

 D.   To The Extent Mr. Young Requests APA Review Of The Board's Decision,
       Those Claims Must Be Dismissed Because The APA Does Not Grant Jurisdiction

Although not specifically cited in his complaint, Mr. Young seems to challenge the Board's decision as arbitrary and capricious, perhaps under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. Complaint, ¶ 5. To the extent that the APA is intended, it is well settled that this Court does not possess jurisdiction to review a Government agency's action pursuant to the APA. *E.g., Lion Raisins Inc. v. United States*, 416 F.3d 1356, 1370 n. 11 (Fed. Cir. 2005) ("Of course, no APA review is available in the Court of Federal Claims."); *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997) ("Once again, the trial court correctly held that it lacks the general federal question jurisdiction of the district courts, which would allow it

20

to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (1994)."). Therefore, Mr. Young's APA claims must be dismissed for lack of subject matter jurisdiction.

## II.   Motion To Dismiss For Failure To State A Claim

### A. Standard Of Review

A motion to dismiss pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the plaintiff's alleged facts do not entitle it to a remedy. *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations of the complaint must indicate to the Court that there is more than "a sheer possibility that the defendant has acted unlawfully." *Id.* at 1949. A complaint must be liberally construed, assuming the facts alleged in the complaint are true. *Id.* at 1949-50. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50 (citing *Twombly*, 550 U.S. at 555). In performing its analysis, a court should not place weight upon any assertions in the complaint other than allegations of fact, because legal conclusions are not given deference. *Iqbal*, 129 S. Ct. at 1949.

### B. Mr. Young Does Not Have A Cognizable Claim Because His Enlistment Expired On April 12, 2005; Therefore, His Complaint Should Be Dismissed

If the Court were to conclude that it possesses jurisdiction to entertain Mr. Young's complaint, this Court should find that his complaint fails to state a claim upon which relief can be granted.

21

Mr. Young asks this Court to promote him to pay grade E-7; award all back pay and allowances at pay grade E-7 retroactive to April 12, 2005, and also retroactive to January 21, 2003;[7] award additional active duty service credit for six years; reinstate him to active duty (if necessary); award retirement pay at pay grade E-7 and 24 years high year tenure with total active duty service credit and DD Form 214 with revised pay grade and service credit; void all reference or record of assignment declination and associated re-entry code from his service record; void performance reports from 2002 through 2004 from his service record; and any and all other entitlements, benefits, pay, allowance, and relief allowed. Complaint, ¶¶ 5-6.

As previously explained, it is well established that servicemembers have no right to reenlist at the expiration of their terms. *Austin,* 206 Ct. Cl. at 723-24; *Dodson,* 988 F.2d at 1203-1204 (stating that "no one has a right to enlist or reenlist in the armed forces, unless specially given one by statute or regulation."). Because no one has a right to enlist or reenlist in the armed forces unless specially granted the right, an enlisted serviceman who has been improperly discharged is entitled to recover pay and allowances only to the date on which his term of enlistment would otherwise have expired had he not been improperly discharged. *Maier v. Orr,* 754 F.2d 973, 983; *Austin,* 206 Ct.Cl. at 723; *Clackum v. United States,* 161 Ct.Cl. 34, 36 (1963). Moreover, an individual is not entitled to pay for a certain position unless he is appointed to that position. *Testan,* 424 U.S. at 402 ("[O]ne is not entitled to the benefit of a position until he has been duly appointed to it."); *Smith v. Army,* 384 F.3d 1288, 1294 (Fed. Cir. 2004) ("As a general matter, a service member is entitled only to the salary of the rank to which he is appointed and in which he serves.").

---

[7] The significance of this date may be the date that the MPF executed the AF Form 964 on Mr. Young's behalf, which provided the basis to enter AAC 09 in Mr. Young's personnel record.

Mr. Young is not entitled to back pay because he was not wrongfully discharged before the end of his current enlistment and, therefore, is not within the scope of 37 U.S.C. § 204. AR 99(a) 63, 99(a) 69-72. Thus, Mr. Young has failed to state a claim for back pay and allowances for the period retroactive to April 12, 2005, the date of both the expiration of his enlistment and his discharge. *Id.* Mr. Young also fails to state a claim for back pay and allowances retroactive to January 21, 2003, at the grade of E-7 because he does not have an entitlement to pay at a rank or position to which he was not appointed. *Testan*, 424 U.S. at 402. Mr. Young was on active duty for the period between January 21, 2003, and April 12, 2005, at the rank of Staff Sergeant, E-5. AR 99(a) 63. In his complaint, he does not allege, nor are there any facts indicating that he was not paid for that period of time on active duty at his assigned rank. Thus, he is not entitled to back pay for that period at his assigned rank. Mr. Young is also not entitled to back pay at a higher rank because he was not promoted to the rank of E-7 during that period, and never held that rank. Mr. Young has been fully compensated for his previous term of enlistment which expired on April 12, 2005.

Mr. Young's requests for reinstatement and retirement should also be dismissed. Due to the limited terms of enlistments, enlisted personnel are not entitled to reinstatement following the expiration of their then-current term of enlistment. *Dodson*, 988 F.2d at 1208; *e.g.*, *Thomas*, 42 Fed. Cl. at 452-53. Mr. Young's enlistment contract expired by its terms on April 12, 2005, and he was accordingly honorably discharged on the same date. AR 99(a) 63, 99(a) 69-72. Thus, Mr. Young is not entitled to actual or constructive reinstatement or constructive retirement beyond the date of expiration of his enlistment. *Dodson*, 988 F.2d at 1208; *e.g.*, *Thomas*, 42 Fed. Cl. at 452-53. As noted above, Mr. Young's enlistment contract expired after approximately 18 years of active service. AR 99(a) 63. He did not reenlist or attempt to reenlist.

23

Therefore, the Court, as a matter of law, cannot grant him constructive reenlistment or constructive retirement. *Montiel v. United States*, 40 Fed.Cl. 67, 72 (1998).

Because Mr. Young does not have a cognizable claim under a money-mandating statute, his remaining equitable claims should also be dismissed. Pursuant to 28 U.S.C. § 1491(a)(2), "the court may, as an *incident of and collateral to* any judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." (emphasis added). Mr. Young's requests for records correction and active duty credit and benefits are collateral to his money claims. These collateral claims should be dismissed because the Court cannot provide the requested monetary relief.

Based on the foregoing, the Court cannot grant Mr. Young's requested relief; therefore, the Court must dismiss all of his claims for failure to state a claim.

C.  Mr. Young's Request That The Court Promote Him To E-7 Is Nonjusticiable

Mr. Young's complaint requests that the Court promote him to the grade of E-7. Complaint, 5-6. In making this request, Mr. Young is attempting to circumvent the promotion process by requesting a Court order promoting him to E-7. His request must be dismissed as nonjusticiable.

Even if the service member states a claim within this Court's jurisdiction, the Court does not possess the power to decide the matter and award relief if the basis for the claim presents a nonjusticiable or non-reviewable issue. *Sargisson*, 913 F.2d at 921-22. "A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988).

24

Federal courts have uniformly declined to order promotions, *Orloff v. Willoughby,* 345 U.S. 83, 93-94 (1953); *Reaves v. Ainsworth,* 219 U.S. 296 (1911); *Doggett v. United States,* 207 Ct. Cl. 478 (1975); *Brenner v. United States,* 202 Ct. Cl. 678 (1973); *Blevins v. Plummer,* 613 F.2d 767 (9th Cir. 1980); *Arnheiter v. Chaffee,* 435 F.2d 691 (9th Cir. 1970); *Dilley v. Alexander,* 603 F.2d 914 (D.C. Cir. 1979). It has been repeatedly held that this Court is without power to direct the promotion of an individual plaintiff because such a claim presents a nonjusticiable issue. *Lindsay v. United States,* 295 F.3d 1252, 1257-1258 (Fed. Cir. 2002) ("[N]either the Court of Federal Claims nor this court will review those specific conclusions of military review boards that speak to the question of whether an officer deserved to be promoted or retained in the service."); *Strickland v. United States,* 36 Fed. Cl. 651, 655 (1996) ("Military promotion decisions are nonjusticiable issues. . . . Therefore, under legal precedent binding upon us, we must find that plaintiff's request for promotion is a nonjusticiable matter."). "A promotion is not a right, privilege, or property." *Strickland,* 36 Fed. Cl. at 655. Promotions within the military are discretionary. *Id.* There are no regulatory tests or standards for the court to determine whether Mr. Young would have received promotion to E-7. It is purely speculative that if he had remained on active duty, Mr. Young would have first been promoted to the rank of Technical Sergeant, E-6, and then promoted again to the rank of Master Sergeant, E-7. Mr. Young's request for the Court to order his promotion, to a rank two above his rank at the time of discharge, is nonjusticiable. Accordingly, Mr. Young's claim for promotion should be dismissed pursuant to RCFC 12(b)(6).

**III.    Even If The Court Were To Determine That Mr. Young's Complaint States A
Cognizable Claim, The Government Is Entitled To Judgment Pursuant To Rule 52.1**

A. Standard Of Review

A motion for judgment on the administrative record is distinguishable from a motion for

summary judgment. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005). In

reviewing a motion for judgment on the administrative record, the Court asks whether, given all

the disputed and undisputed facts, a party has met its burden of proof based on the evidence in

the record. *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum

Inc.*, 404 F.3d at 1356). The existence of a question of fact neither precludes the granting of a

motion for judgment nor requires this Court to conduct an evidentiary proceeding. *See Bannum

Inc.*, 404 F.3d at 1355-56; *Fort Carson Support Servs. v. United States*, 71 Fed. Cl. 571, 585

(2006). Instead, fact questions must be resolved by reference to the administrative record, "as if

[this Court] were conducting a trial on [that] record." *Bannum Inc.*, 404 F.3d at 1357.

The well-settled standards of review of military correction board decisions govern the

Court's assessment. This Court reviews administrative decisions of the military under a

deferential standard so as to "not disturb the decision of the [agency] unless it is arbitrary,

capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*,

591 F.3d 1372, 1376-77 (Fed. Cir. 2010) (citing *Chambers*, 417 F.3d at 1227); *see also Wronke

v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986).

The United States Court of Claims stated the standard is as follows:

> It takes more than an unfair rating or simple injustice to merit our
> consideration or judicial relief. It must be an unlawful act made so
> by violation of statute, or regulation, or published mandatory
> procedure, or unauthorized act, or so unsupported by the evidence
> as to be a gross injustice, unlawful because of clear legal or factual

26

error, manifest abuse of discretion, or arbitrary and capricious
action amounting to bad faith or fraud, and seriously prejudicial.

*Skinner v. United States*, 594 F.2d at 830 (citations omitted).

Accordingly, once a plaintiff seeks relief from a military corrections board, the board's
determination binds him unless he can demonstrate the board's determination was arbitrary,
capricious, unsupported by substantial evidence, or contrary to applicable statutes and
regulations. *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998) (citation omitted);
*Koretsky v. United States*, 57 Fed. Cl. 154, 158 (2003).

The plaintiff bears the burden of overcoming the "strong, but rebuttable, presumption that
the military discharges its duties correctly, lawfully and in good faith." *Bernard v. United States*,
59 Fed. Cl. 497, 501 (2004) (citations omitted); *see also, Richey v. United States*, 322 F.3d 1317,
1326 (Fed. Cir. 2003) (noting "the presumption of regularity that attaches to all administrative
decisions" of the United States).  Plaintiff can only meet his considerable burden by presenting
"cogent and convincing evidence" that the Board erred. *Dorl v. United States*, 200 Ct. Cl. 626,
633 (1973).

Judicial review in this case is limited to the administrative record before the Air Force.
*See Wyatt v. United States*, 23 Cl. Ct. 314, 319 (1991).  This standard of review "does not require
a reweighing of the evidence, but a determination whether the conclusion being reviewed is
supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir.
1983) (emphasis omitted).  When substantial evidence supports a board's action and that action
is reasonable in light of all the evidence presented, the Court will not disturb the result because it
does not sit as a "super correction board[.]" *Van Cleave v. United States*, 70 Fed. Cl. 674, 678-
79 (2006).

27

B. The Board's Decision Was Based On Substantial
   Evidence And Was Not Aribtrary Or Capricious

The Board's decision was well reasoned, based on a review of all facts and evidence in
the case, including Mr. Young's written arguments, documentary evidence, and his rebuttal to
the advisory opinions. The Board clearly explained its rationale and cited the evidence upon
which it based its conclusions, as required by the substantial evidence standard of review. AR 3-
10.

The record also reflects that the Board relied on correspondence from various Air Force
Offices of Primary Responsibility—subject matter experts—related to these personnel actions.
In this case, the subject matter experts came from various offices within the Air Force Personnel
Center (AFPC): AFPC/DPAAS (AR 100); AFPC/DPF (AR 101-102); AFPC/DPPP (AR 103-
105); and AFPC/JA (AR 106-107). AR 6.

After considering Mr. Young's submissions, the Board concluded that there was
insufficient relevant evidence to demonstrate the existence of error or injustice. AR 8. The
Board stated that it agreed with the opinions and recommendations of the Air Force offices of
primary responsibility, and Mr. Young's uncorroborated assertions did not overcome the
rationale provided by the Air Force. AR 8. Further, the Board adopted the rationale provided by
the Air Force offices of primary responsibility as the basis for its conclusion that Mr. Young had
not been the victim of an error or injustice. AR 8.

Specifically, the Board found that (1) execution of the PCS Declination Statement was
not erroneous or unjust; (2) there was no evidence that the 2002-2004 EPRs were not an accurate
depiction of Mr. Young's performance and demonstrated potential during each rating period; (3)
there was no evidence to support Mr. Young's assertions that the 2002-2004 EPRs were the

28

result of the abuse of discretionary authority, that they were based on inappropriate considerations, or that the reports were technically flawed; (4) the LOR was not issued in retaliation, rather it was issued in response to his refusal to obey lawful orders; (5) the LOC was informative in nature, rather than derogative, therefore there was no reason why its removal would be warranted; (6) there was no evidence that Mr. Young's commander submitted a request that he be awarded an AFCM, therefore there was no basis to favorably consider the request; and (7) based upon the preceding findings, there was no basis to favorably consider promoting Mr. Young to pay grade E-6 or E-7, or to assign him to his base of preference. AR 9.

Courts presume civil and military officials in the armed forces act properly and in accordance with the law. *Bockoven v. United States*, 727 F.2d 1558, 1563 (Fed. Cir. 1984). Accordingly, Mr. Young bears the burden of overcoming the "strong, but rebuttable, presumption" that the military discharges its duties "correctly, lawfully and in good faith." *Doe*, 132 F.3d at 1434. Mr. Young cannot meet that burden. The record establishes that the Board relied upon substantial evidence in support of its decision, and the decision's detailed rationale reveals it is neither arbitrary nor capricious. Therefore, provided the Board's decision was not contrary to law, this Court should grant judgment upon the administrative record in favor of the United States. *See Heisig*, 719 F.2d at 1156.

Because the record clearly demonstrates that the Board reviewed the submissions and examined the record appropriately and that it relied on various experts in the fields of enlisted personnel actions, the Board's decision cannot be characterized arbitrary, capricious, contrary to law or unsupported by substantial evidence. *See Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004).

29

C.    The Board's Decision Was Not Contrary To Law Or Regulation

Mr. Young alleges that the MPF failed to follow the procedure in AFI 36-2110,

¶ 2.29.6.4.2 (AR 79), to conduct a retainability interview and to require airmen to obtain

retainability no later than 30 days after official PCS notification. Complaint, ¶¶ 1-5; *see* AR

109-110. Mr. Young essentially argues that the declination of retainability was invalid because it

was not obtained during a retainability interview within 30 days of him receiving the

Notification. In other words, the MPF's legal authority to require retainability extended only to

the period 30 days from his receipt of the Notification, and all actions that occurred outside the

30-day period violated Air Force instructions, such as submitting the AF Form 964 without his

signature, and assigning him AAC 09. Mr. Young does not refute the fact that he was informed

of the consequences of declining to obtain retainability, and that he in fact refused to obtain

retainability.

The applicable regulation places the responsibility on the servicemember to take the

appropriate action to accept the orders and obtain retainability or decline the orders and be

ineligible for promotion, enlistment or reenlistment. AFI 36-2110, ¶ 3.6. Upon receipt of the

Notification in July, 2002, Mr. Young indicated that he would obtain the retainability required to

execute the OS PCS, and that he read and understood the applicable provisions of AFI 36-2110

pertaining to retirement options and PCS declination and would comply within the specified time

period. AR 126.

In addition, AFI 36-2110 does not place a time limit on the MPF's ability to take any

action. Reading the instruction in that manner would allow servicemembers to avoid an OS

transfer or obtaining retainability simply by avoiding the MPF for 30 days. As the adopted and

30

incorporated opinion from AFPC/DPAAS explained, Mr. Young refused to obtain the additional retainability required for the PCS assignment, the AAC 09 was updated as a result of Mr. Young's voluntary actions, and there was no evidence to support that the action was done in error. AR 100. Last, Mr. Young did not use the option to request removal of an AAC 09 from his records. *Id.* Based upon the facts presented, the Board appropriately found that the execution of the PCS Declination Statement was not erroneous or unjust. AR 9.

Mr. Young cites no "law, regulation, or mandatory published procedure" that contravenes the Board's decision. *Heisig*, 719 F.2d at 1156. Although he cites to a number of cases that allegedly support his claims, Complaint, n. 2, they are unavailing.[8] The only case that Mr. Young cites that we could locate is *Wisotsky v. United States*, 69 Fed.Cl. 299 (2006), in which this Court reversed the decision of a board of inquiry when that board failed to act as required by Navy regulation. That case is irrelevant to Mr. Young's case. Therefore, because the Board's decision is supported by substantial evidence, the Court should sustain the decision.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court grant our motion and dismiss this case for lack of subject matter jurisdiction pursuant to RCFC 12(b)(4), dismiss for failure to state a claim pursuant to RCFC 12(b)(6), or grant judgment for the Government upon the administrative record in this case pursuant to RCFC 52.1.

---

[8] Because Mr. Young only included case names, and not citations, it is unclear precisely which cases he is referring to. A search of the "ALLFEDS" database of Westlaw by title returned no results for "Rosko v. United States," "Dulles Voge v. United States," or "Scarf v. Department of Air Force," and over 100 results each for "Lindsay v. United States," "Christie v. United States," "Carmichael v. United States," "Conn v. United States," and "Service v. United States."

31

Respectfully submitted,

TONY WEST
Assistant Attorney General

JEANNE E. DAVIDSON
Director

*Reginald T. Blades, Jr.*
REGINALD T. BLADES, JR
Assistant Director

OF COUNSEL:

MAJOR IMELDA L. PAREDES
MAJOR LAUREN DIDOMENICO
Trial Attorney
Military Personnel Litigation Branch
1500 W. Perimeter Road, Suite 1370
Joint Base Andrews, Maryland 20762
Tel: (240) 612-4726
Fax: (240) 612-4450

*Austin Fulk*
AUSTIN FULK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0546
Fax: (202) 353-0972
Attorneys for Defendant

July 11, 2011

32

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 11, 2011, a copy of the foregoing

"DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER

JURISDICTION, OR IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM, OR IN

THE ALTERNATIVE, DEFENDANT'S MOTION FOR JUDGMENT UPON THE

ADMINISTRATIVE RECORD" was filed served via United States upon:

Michael E. Young
5025 Nellis Oasis Lane #80
Las Vegas, NV 89115
Tel: (702) 583-1411

Leslie M. White